Bruce L. Jones, Appellee, v. Smith Oil and Refining Company, Appellant.

Gen. No. 9,293.

Opinion filed April 28, 1938. Rehearing denied June 2, 1938.

KARL C. WILLIAMS, of Rockford, for appellant; CHARLES A. HASKELL, of counsel.

LARGE & RENO, of Rockford, and RALPH S. ZAHM, for appellee; WILLIAM H. GATES, of counsel.

MR. JUSTICE WOLFE delivered the opinion of the court.

Bruce L. Jones, plaintiff, on November 22, 1937, filed a verified petition in the circuit court of Winnebago

county in which he seeks a temporary injunction, and after the hearing, a permanent injunction, restraining the defendant, The Smith Oil & Refining Company, a corporation, from carrying into effect a scheme known as the ''Lucky License Pay-off Plan,'' alleging that the same constitutes a lottery as defined by the constitution of the State of Illinois, and also by the revised statutes.

It is alleged that the plaintiff is the operator of a retail oil service station in the city of Rockford, Illinois; that the defendant is the largest of the so-called independent oil companies doing business in Rockford, Illinois, and is engaged in the wholesale and retail selling of gasoline, oils, greases and other products, and is in direct competition with the plaintiff; that their places of business are on the same street directly opposite each other; that the plan proposed by the defendant is, that at each of the retail stations and also at the wholesale station, literature shall be distributed relating to the above plan whereby a person visiting the oil station of the defendant will be given a qualifying card which will entitle him to participate in the drawing of $200 at the end of each month; that the said advertising states that it is not necessary to buy any of defendant's products to get a qualifying card, but they say they will be distributed free to anyone asking for them, provided he is the owner or driver of an automobile; that when such cards are delivered the license number of the automobile will be taken, and the owner of such car license, as shown by the qualifying cards, will be entitled to participate in the drawing.

The defendant filed its answer in which it admitted it was contemplating engaging in the plan as described in the bill of complaint; that it has spent a large sum of money advertising the same, but averred that the same constituted sound, legitimate advertising, and denies that the same constituted a lottery. They also deny that the plaintiff is entitled to the relief stated,

and also, that the court is without jurisdiction to grant an injunction in a suit of this kind. The court ordered a temporary injunction restraining the defendant from continuing in their plan as contemplated, and it is from this order that the case is brought to this court.

The appellant has assigned numerous reasons why this judgment should be reversed, but most of them can be disposed of in deciding whether this scheme is a lottery and a violation of the constitution and the statute. It seems to us that the Supreme Court has decided the issues in this case in the case of the *Iris Amusement Corp. v. Kelley*, 366 Ill. 256. This is known as the "Bank Night" case. The court in a unanimous decision, after reviewing quite a number of cases, held that the same was a lottery. On page 261 of this opinion we find the following language: "Our public policy in opposition to lotteries is ancient and is imbedded in our fundamental law. By section 35 of article 3 of our constitution of 1848, it was provided that the legislature should have no power to authorize lotteries for any purpose. In our constitution of 1870, it is provided by section 27 of article 4, that 'the General Assembly shall have no power to authorize lotteries or gift enterprises for any purpose, and shall pass laws to prohibit the sale of lottery or gift enterprise tickets in this State.' It will be observed that the constitution of 1870 adds the words 'gift enterprises,' which were not found in the constitution of 1848. Pursuant to this constitutional mandate the legislature, without attempting any exact definition of the term 'lottery,' has made the setting up of a lottery a misdemeanor. (State Bar Stat., 1935, chap. 38, par. 401, p. 1208.) Both the constitution and the statute therefore leave the definition of the word 'lottery' to its commonly accepted and generally understood meaning.

"In *People v. McPhee*, 139 Mich. 687, 107 N. W. 174, 69 L. R. A. 505, the meaning of the term 'lottery' was before the court. It was pointed out that the term is

generic in nature and best left without exact definition, because as the court said, 'no sooner is it defined by a court than ingenuity evokes some scheme within the mischief discussed, though not quite within the letter of the definition given.' In *Dunn v. People,* 40 Ill. 465, we said that the word 'lottery' has no technical meaning in the law distinct from its popular signification, and the *People v. Monroe,* 349 Ill. 270, we accepted Webster's definition, 'A scheme for the distribution of prizes by lot or chance,' as being sufficient for the purpose of that case.''

The case of *Featherstone v. Independent Service Station Ass'n,* a Texas case reported in 10 S. W. (2d) 124, is very similar to the one we are now considering. In the Texas case they gave tickets to their customers who came to their different stations, and also gave some to individuals who were not purchasers. The court in discussing the merits of the case use this language: ''We readily agree to the correctness of the proposition that, if tickets given by the defendants and other members of the association were gifts, unsupported by a consideration moving from the ticket holder, were in fact, gratuities pure and simple, the lottery statute was not violated, for the evident reason that a person is at liberty to give away his property, by chance, at a drawing, to ticket holders, or in any other manner, without violating the law. But is the case at bar of that nature? We do not think so for the following reasons: The change wrought as testified to by defendants was not a change in the scheme itself, but merely in the procedure, or method of executing the same. Instead of giving a ticket to a customer for every dollar's worth of merchandise purchased, they gave tickets to whomsoever they pleased—customers and noncustomers as well.''

The court in the *Iris Amusement Corp. v. Kelley* case, *supra,* says, ''Quite contrary to the plaintiff's

argument, the element of price is present. As the Massachusetts court said, we may look at this thing realistically and sensibly. We know that those within the theatre pay for any chance anyone outside may have to win.'' The people who bought the products of the appellant would have to pay for the prize that the winner would get if he did not purchase something from some of the appellant's stations.

It is our conclusion that the ''Lucky License Pay-off Plan'' comes clearly within the State constitution statutory provisions of a lottery, and that the same is illegal.

It is argued strenuously by the appellant that the courts have no jurisdiction to grant an injunction to restrain a person from committing a crime, and this is, in effect, what the granting of an injunction is doing in this case. The injunction in this case was not issued on the theory that it was to restrain the appellant from committing a crime, but on the theory that the contemplated plan was a violation of law and that the same would be unfair competition of trade as against the appellee, and if permitted to continue would seriously interfere with the business of the appellee, and for this reason the injunction was issued. Under such conditions it is our opinion that the injunction was properly issued, *Featherstone v. Independent Service Station, supra.*

It is our conclusion that the court properly found that the ''Lucky License Pay-off Plan'' was a lottery scheme, and that the court had jurisdiction to issue the injunction as ordered. The judgment of the circuit court of Winnebago county is hereby affirmed.

*Judgment affirmed.*