UNITED STATIONS OF NEW JERSEY (US), A CORPORATION OF NEW JERSEY, AND NICHOLAS DEL SPINA, PLAINTIFFS, v. WILLIAM KINGSLEY, ACTING DIRECTOR OF THE NEW JERSEY DIVISION OF TAXATION; GETTY OIL COMPANY, A DELAWARE CORPORATION, SHELL OIL COMPANY, A DELAWARE CORPORATION, ATLANTIC RICHFIELD COMPANY, A DELAWARE CORPORATION, ALL DOING BUSINESS IN NEW JERSEY; HUMBLE OIL AND REFINING COMPANY, A NEW JERSEY CORPORATION; CLIFTON CREECH, t/a CLIFF'S AUTO SERVICE, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS OF RETAIL MOTOR FUEL DEALERS ENGAGING IN SHELL OIL COMPANY'S "AMERICANA" GAME; GEORGE W. SCHUTZ, t/a WERNER'S AUTO SERVICE, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS OF RETAIL MOTOR FUEL DEALERS ENGAGING IN ATLANTIC OIL COMPANY'S "MATCH THE RED BALL" CONTEST; AND ANTHONY RECCHIA, t/a RECCHIA'S FLYING A SERVICE, INDIVIDUALLY AND AS REPRESENTATIVE OF A CLASS OF RETAIL MOTOR FUEL DEALERS ENGAGING IN TIDEWATER OIL COMPANY'S "FLYING ACES" CONTEST, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided February 23, 1968.

576

*Mr. Donald M. Weitzman* for plaintiff Nicholas Del Spina (*Messrs. Weitzman, Brady & Weitzman,* attorneys).

*Mr. William P. Reiss* for defendant Getty Oil Company (*Messrs. Pitney, Hardin & Kipp,* attorneys).

*Mr. William Simon* of the District of Columbia Bar and *Mr. Verling C. Enteman* for defendants Shell Oil Company and Clifton Creech.

*Mr. Francis E. P. McCarter* for defendant Atlantic Richfield Company (*Messrs. Richard C. Cooper* and *Andrew G. Emerson* on the brief; *Messrs. McCarter & English,* attorneys).

*Mr. Alfred Abbotts* for defendant Humble Oil and Refining Company (*Messrs. McLaughlin & Abbotts,* attorneys).

*Mr. Michael D. Loprete* for defendant George W. Schutz (*Messrs. Mattson, Madden, Polito & Loprete,* attorneys).

*Mr. Sam Magnes* for defendant Anthony Recchia.

MINTZ, J. S. C. This matter is before the court on motion of plaintiff Del Spina for summary judgment. The claim of co-plaintiff United Stations of New Jersey was dismissed as to Shell Oil Company for lack of standing. Counsel for plaintiffs in his memorandum filed in support of this motion states that the complaint of United Stations of New Jersey "admittedly can be dismissed as to other defendants." Accordingly, an appropriate order will be submitted to that

effect. It may also be noted that the complaint has been dismissed as to defendant William Kingsley, Acting Director of the New Jersey Division of Taxation.

The present application by Del Spina is for injunctive relief. At the oral argument on the motion he stipulated that he sought no monetary relief. Plaintiff, who operates a Mobil filling station at 460 Main Street, Orange, seeks relief against the named major oil and refining companies and against the named retail dealers, individually and as class representatives of service station operators throughout the State for the Shell Oil Company, Atlantic Richfield Company and Tidewater Oil Company (now Getty Oil Company), respectively. He moves the court to enjoin the oil companies and their participating retail dealers from conducting certain giveaway contests—Shell's "Americana," Atlantic Richfield's "Match the Red Ball," Humble Oil and Refining Company's "Tigerama," and Getty's "Flying Aces," apparently superseded by "Make Money."

The contests sponsored by the respective oil companies are the same in principle. No contest requires the public to purchase any merchandise as a condition for participation, and no retail service station operator is required to conduct a contest sponsored by his oil company. The oil companies sell to willing retail service station operators quantities of contest tickets or slips and supply these dealers with other promotional materials. Although the profusion of the games has given birth to numerous contest forms, generally if a contestant obtains matching tickets or slips he is entitled to a prize. The lesser cash and consumer goods prizes are paid or dispensed by the retail dealer who is reimbursed by his oil company. The larger prizes are paid or dispensed directly by the sponsoring major oil companies. In most instances the distribution of contest slips is restricted to licensed drivers who enter the retailers' premises and ask for them, although some companies instruct their participating retailers to issue slips to any service station visitor who requests them.

Plaintiff's claim to injunctive relief is predicated upon the claim that the service stations' promotional contests violate *N. J. S. A.* 56:6–2(*f*) which provides that:

"It shall be unlawful for any retail dealer to use lotteries, prizes, wheels of fortune, punch-boards or other games of chance, in connection with the sale of motor fuels."

This cited provision is part of a 1938 enactment entitled "An Act to regulate the retail sale of motor fuels," *N. J. S. A.* 56:6–1 to 17.

When the oil companies first proposed promotion of the contests in the spring of 1966, they inquired of state officials for an opinion as to their legality. On August 1, 1966 the Attorney General's office ruled:

"* * * at the present time and under present practices, [these contests] do not appear to be violations of *N. J. S. A.* 56:6–2(f). All of the promotions as presently undertaken provide that a participant need not purchase motor fuel * * *."

Defendants interpose many defenses to plaintiff's motion for summary judgment. They urge that he has no standing to sue for injunctive relief against alleged violations of a statute penal in nature. They argue that their contests do not constitute lotteries or games of chance because plaintiff has failed to show that consideration, an alleged requisite element of these devices, is present. They also contend that the giveaways are not conducted "in connection with the sale of motor fuels" and hence are not violative of the statute. Another assertion is that plaintiff presents no proof of damage or threatened damage to his business sufficient at this time to entitle him to permanent injunctive relief. It is further contended that plaintiff is guilty in two respects of unclean hands. Finally, defendants contend that factual issues are presented which preclude the entry of summary judgment.

■■ On motion for summary judgment it is the movant's burden to exclude any reasonable doubt as to the exis-

tence of any genuine issue of material fact. *R. R.* 4:58–3. All inferences of doubt are drawn against the movant in favor of the opponent and the papers supporting the motion are closely scrutinized and opposing papers indulgently treated. Such relief is to be granted with much caution. *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 N. J. 67 (1954).

The challenge to plaintiff's standing to sue arises from the absence in *N. J. S. A.* 56:6–1 to 17 of an explicit authorization for suits by private parties against the statute's violators. The statute authorizes the State Tax Commissioner (now Director of the Division of Taxation) to enforce its provisions. *N. J. S. A.* 56:6–3. Under *N. J. S. A.* 56:6–3 the Director may bring actions against offenders for penalties as therein prescribed to be recovered in the name of the State, or under *N. J. S. A.* 56:6–4(e) he may file a complaint for an injunction to prohibit habitual violations. Therefrom it is argued that the sole power of enforcement of the cited statute is assigned to the Director of the Division of Taxation and no private right to injunctive relief should be implied. To support this position defendants also refer to the related "Unfair Motor Fuels Practices Act" of 1953, *N. J. S. A.* 56:6–19 to 32, which attempts to regulate economic relations between motor fuel wholesaler and retailer. That statute specifically provides that any injured person may sue to enjoin in a court of equity jurisdiction a violation or threatened violation of any of the provisions of the act. *N. J. S. A.* 56:6–25. Defendants therefore argue that of *N. J. S. A.* 56:6–25 indicates that had the Legislature intended to confer upon an aggrieved individual a right to sue under *N. J. S. A.* 56:6–1 to 17, that body either would have originally done so or, upon discerning the device's usefulness in trade regulation enforcement, have amended the 1938 act accordingly.

Initially, it is to be observed that even though the silence of a particular statute does not alone justify the conclusion that the Legislature affirmatively "intended" that there

should be a private remedy for it, neither does the statute's silence justify the conclusion that the Legislature had the contrary "intention." Loss, "The SEC Proxy Rules in the Courts," 73 *Harv. L. Rev.* 370, 383 (1960). Nonetheless, the common law may recognize the standing of members of a class, for whose protection a statutory duty is created, to sue for injuries resulting from breach of the statute's protected interest. In such cases the common law can supply a remedy even if the statute gives none. *Baird v. Franklin,* 141 *F. 2d* 238, 245 (*2d Cir.* 1944), *certiorari* denied 323 *U. S.* 737, 65 *S. Ct.* 38, 89 *L. Ed.* 591 (1944) ; *Restatement, Torts 2d,* § 286, and *comment* (d) (1965). See also *Garrou v. Teaneck Tryon Co.,* 11 *N. J.* 294, 300 (1953) where the court held that a property owner who suffers special injury through violation of a zoning ordinance has standing to obtain an equitable injunction against the violator.

Additionally, defendants' comparative analysis of the remedies afforded by both *N. J. S. A.* 56 :6-1 to 17 and *N. J. S. A.* 56 :6-19 to 32 does not buttress their defense that plaintiff should not have standing to sue. The comparison unveils no clear indication of an affirmative legislative intent in the enactment of either statute to preclude the common law from supplying a private remedy for the 1938 act.

Plaintiff asks the court to imply a private right to injunctive relief against those who, by sponsoring, promoting and conducting giveaways which he claims violate *N. J. S. A.* 56 :6-2 (f), allegedly harm or threaten to harm his business and his right to conduct same. *Featherstone v. Independent Service Station Ass'n of Texas,* 10 *S. W. 2d* 124, 128 (*Tex. Civ. App.* 1928). In essence, he charges defendants with unfair competition.

*N. J. S. A.* 56 :6-1 to 17, in prescribing standards of commercial conduct for the retail motor fuel trade, has as one of its aims the prevention of chaotic, destructive competitive practices among retailers. See *Sperry & Hutchinson Co. v. Margetts,* 25 *N. J. Super.* 568, 574 (*Ch. Div.* 1953), af-

firmed 15 *N. J.* 203 (1954). In particular, *N. J. S. A.* 56:6–2(f) serves to insulate retailers from pressures to combat competitors' games of chance with contests of their own.

Branded by *N. J. S. A.* 56:6–2(f) as commercially undesirable, "lotteries" and "other games of chance in connection with the sale of motor fuels" are competitive weapons devised to attract the attention of customers. If a nonparticipating retailer is not afforded injunctive relief, he is put to an unjustifiable choice as long as he cannot persuade the law-enforcing authorities to act promptly: he must either violate the law himself or see his business diverted. *Featherstone v. Independent Service Station Ass'n of Texas, supra;* Note, "Developments—Competitive Torts," 77 *Harv. L. Rev.* 888, 975–8 (1964) ; Note, 42 *Harv. L. Rev.* 693 (1929). The common law will, if possible, supply to any deserving businessman relief from undesirable commercial behavior that is both "injurious and transgressive of generally accepted standards of common morality or of law * * *." *Di Cristofaro v. Laurel Grove Memorial Park,* 43 *N. J. Super.* 244, 254–255 *(App. Div.* 1957). A competitor's violation of *N. J. S. A.* 56:6–2(f) meets that test.

Courts in several jurisdictions have implied a competitor's private right to an injunction even where the violated statute was the criminal lottery act, devoid of competitive trade regulation as an ostensible purpose. See *Featherstone v. Independent Service Station Ass'n of Texas, supra; Glover v. Malloska,* 238 *Mich.* 216, 213 *N. W.* 107, 52 *A. L. R.* 77 *(Sup. Ct.* 1927) ; *Jones v. Smith Oil & Refining Co.,* 295 *Ill. App.* 519, 15 *N. E. 2d* 42 *(App. Ct.* 1938). *Cf. United-Detroit Theaters Corp. v. Colonial Theatrical Enterprise, Inc.,* 280 *Mich.* 425, 273 *N. W.* 756 *(Sup. Ct.* 1937).

In accord with these decisions, 2 *Callmann, Unfair Competition and Trade-Marks (2d ed.* 1950), § 63.2(c), at *p.* 947, states that

"* * * If lotteries are outlawed by statute, the court should not find it too difficult to justify the issuance of an injunction in a suit brought by a law-abiding competitor. * * *"

This conclusion to give a competitor standing to sue and to supply him a private remedy is even more compelling when a statute, such as in the instant situation, specifically regulates trade practices by, among other things, setting forth a standard of fair competition and by protecting retailers, such as plaintiff, from derelictions of the statutory duty. For these reasons, I find that plaintiff has standing to sue.

Defendants further urge that injunctive relief should also be denied plaintiff because he was *in pari delicto* with defendants and not deserving of relief due to his "unclean hands." Plaintiff admits his participation from October to December 1966 in Mobil's initial giveaway contest, "Play Safe," and additionally admits that he conducted his contest in violation of Mobil's regulation that contest pieces should be distributed to any eligible visitor to the dealer's station who requested the same. Concededly, he declined participation in subsequent promotional contests sponsored by Mobil.

The doctrine of unclean hands is to be applied flexibly in the interest of fairness and justice. *City of Paterson v. Schneider,* 31 *N. J. Super.* 598 (*App. Div.* 1954). Relief can be awarded to a former wrongdoer such as plaintiff where in the particular case public policy has been found to be best served by that course. *Ibid.,* at *page* 606; *Casini v. Lupone,* 8 *N. J. Super.* 362, 366 (*Ch. Div.* 1950); *Hansen v. Local No.* 373, 140 *N. J. Eq.* 586, 590 (*Ch.* 1947); *Pendleton v. Gondolf,* 85 *N. J. Eq.* 308, 314 (*Ch.* 1915). The public policy reflected in *N. J. S. A.* 56:6–2(f), which plaintiff desires his own competitors to obey, looms more important than plaintiff's short-term conduct. Hence, the fact that he conducted a similar game of chance at his service station in 1966 will not bar him from equitable relief.

Shell also urges by way of affirmative defense and counterclaim, supported by affidavits, that plaintiff's hands are unclean in that he participated in a conspiracy to fix prices among retail dealers and to restrain trade unlawfully. It is alleged that this litigation is part of such conspiracy, and that Shell's damage is the expense of defending this

litigation. See *Gorrin v. Higgins,* 73 *N. J. Super.* 243, 251 (*Ch. Div.* 1962). While Shell's pleadings do not expressly allege an abuse of process, they approximate the same. Plaintiff has not made any motion for summary judgment on the counterclaim. Under all the stated circumstances it is inappropriate to strike the affirmative defense which is also the subject of the counterclaim.

Next, defendants argue that their giveaways are not "lotteries" or "other games of chance" within the intendment of this statute. No party disputes that winning is determined by chance and not skill. The defendants contend, however, that "consideration," like chance and prize, is an indispensable element of a lottery. They assert that *N. J. S. A.* 2A:121-6 (*L.* 1961, *c.* 39, *p.* 394, § 1, as amended by *L.* 1964, *c.* 65, § 1), which defines "lottery" in the criminal lottery statute, controls the construction of the term "lottery" as used in *N. J. S. A.* 56:6-2(f). *N. J. S. A.* 2A:121-6 defines lottery *"as used in [that] chapter,"* as "a distribution of prizes by chance in return for a consideration in the form of money or other valuable thing. * * *" That statute also provides that consideration does not exist upon submission of a box top, package label or coupon connected with merchandise sold by the sponsor of the contest, provided the sales price of the merchandise does not include any direct or indirect charge to the purchaser for the right to participate. The enactment of *N. J. S. A.* 2A:121-6 in effect nullified the holding in *Lucky Calendar Co. v. Cohen,* 19 *N. J.* 399 (1955), a case arising under the lottery statute.

It is my belief that *N. J. S. A.* 2A:121-6 should not control a construction of *N. J. S. A.* 56:6-2(f). The former provision explicitly limits the definition's applicability to the term "lottery," as used in the lottery statute, *N. J. S. A.* 2A:121-1 to 6.

The purpose of a criminal lottery statute such as *N. J. S. A.* 2A:121-1 to 6 is to prevent members of the public from being cheated and defrauded of their money in return for a mere chance to receive something which may

or may not be of greater value than the sum they have invested. 1 *Callmann, Unfair Competition, Trademarks and Monopolies* (3d ed. 1967), § 31, *p.* 1056. However, a regulatory trade statute banning lotteries and games of chance serves a somewhat expanded purpose in that it is designed, in part, to deter competitors from resorting to such devices as a means of attracting business.

 Hence, as Callmann, *op. cit.,* observes at *page* 1056:

"* * * From a competitive aspect, therefore, consideration in a lottery is not only an insignificant element, but its absence renders the game device much more effective in attracting attention * * *."

Thus, under such a statute, cash consideration may not be a requisite element of a "lottery." Moreover, the catch-all phrase, "other games of chance", in *N. J. S. A.* 56:6-2(f) denotes a ban on a class of giveaway promotions broader than the conventional cash consideration lottery.

Assuming *arguendo* that consideration is required under the statute here in question as to "games of chance," it may be argued that such consideration is furnished by requiring the participant in the contest to visit the retail dealer's premises in order to receive his slip or ticket. There is also the expectation of an increase in the retailer's business through this lure. *Cf. Lucky Calendar Co. v. Cohen, supra.* In regard to "no purchase necessary" promotions, there is the further observation in *Jones v. Smith Oil & Refining Co., supra,* that:

"* * * The people who bought the products of the [lottery promoter] would have to pay for the prize that the winner would get if he did not purchase something from some of the [promoter's] stations." (15 *N. E. 2d,* at *p.* 44)

 Defendants also argue that their games are not operated "in connection with the sale of motor fuels" because no purchase of fuel is necessary to enter them. Affidavits have been filed by Shell representatives which dis-

claim any intention of their company to use the "Americana" game "in connection with the sale of motor fuels," and aver that the game is intended merely as a means of advertising the name and products of that major oil company. Plaintiff contends, however, that the games' no-purchase feature is pure artifice, a subterfuge designed to conceal their real nature and purpose. See *State v. Berger,* 126 *N. J. L.* 39 (*Sup. Ct.* 1941). He points to the requirement of the games that contestants go upon a participating retailer's premises to obtain contest slips, and that their purpose and effect is to act as a lure to spur sales of motor fuels.

While there is merit to plaintiff's position that the games are seemingly conducted "in connection with the sale of motor fuels," several factors constrain me not to foreclose this issue at this juncture. I cannot overlook the affidavits of the Shell representatives. Also, ultimately it may be determined that a "no purchase necessary" contest requiring entrants to appear at the retailer's premises supplies him the effective competitive advantage in the sale of motor fuels which the statute, in part, seeks to deter. Thus, whether the contests may be held to be "games of chance" absent the conventional cash consideration, and whether such games are used "in connection with the sale of motor fuels," may well be interrelated issues. Hence, both issues should be fully explored in a plenary hearing. If on such hearing plaintiff proves that the alleged competitively advantageous "no purchase necessary" promotions have increased the motor fuel sales of his competitors to his loss, this would be evidence that the games are in fact "games of chance" used "in connection with the sale of motor fuels."

In this regard defendants also contend that plaintiff is not entitled to relief because he has failed to prove that the games have injured his business. There is evidence to the effect that plaintiff increased his sales price for motor fuel. This possibly may have contributed to his loss of business. In any event, the cause of plaintiff's decline in business remains a fact issue. An injunction will issue only

upon a showing of loss, or likely loss, of business to his competitors. 77 *Harv. L. Rev., supra,* at *p.* 976; *New Jersey State AFL-CIO v. State Federation of District Boards of Education,* 93 *N. J. Super.* 31, 42 (*Ch. Div.* 1966). *Cf. United-Detroit Theaters Corp. v. Colonial Theatrical Enterprise, Inc., supra.*

 Some further observations appear in order. The statutory prohibition against lotteries and games of chance is directed against retailers only. Plaintiff stated that he joined the major oil companies so that he might be afforded complete relief. Injunctive relief, if granted, against his competing neighboring retailers would give him the complete relief to which he would be entitled.

 Plaintiff seeks an injunction against the named defendant retailers, individually and as representatives of classes of retail dealers of Shell, Atlantic Richfield and Getty products, respectively. Should plaintiff ultimately prevail at final hearing, he is entitled to only such relief as will afford him protection from unfair competition on the part of his competitors. Clearly, a retail dealer in Atlantic City, Trenton or Newton conducting a game of chance is not a competitor of plaintiff and his games do plaintiff no harm. Plaintiff will be required to prove that the designated class representatives are in fact his competitors. He will also be required to establish his competitive area. And, of course, if ultimately plaintiff is afforded injunctive relief, it will be restricted to members of the respective classes in such area.

The motion for summary judgment is denied. An order will be submitted embodying the findings and conclusion herein made, consented to as to form or to be settled on notice.